

**SIGNED this 21st day of August, 2013.**

_____
**TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | No. 13-11173-TMD |
| | § | |
| CAROL FEILLE D'AVILA | § | |
| | § | |
| | § | Chapter 7 |
| Debtor. | § | |

## MEMORANDUM OPINION

In this case, the Court must decide whether a debtor who filed bankruptcy under Chapter 7 of the Bankruptcy Code and promptly claimed a Texas homestead exemption can be restricted from later selling that homestead and disposing of the proceeds of sale as she wishes. As explained in this Memorandum Opinion, the Court determines that the homestead is no different from any other exempt property, and once it has been duly exempted, the Chapter 7 debtor is free to dispose of it as she wishes, including by selling it and keeping the proceeds.

The Court has considered the Application of Debtor to Sell Property Free and Clear of Liens and Other Interests (the "Application to Sell") [Dkt. No. 6], the Debtor's Post Trial Brief

1

Regarding Debtor's Application to Sell Property Free and Clear of Liens (the "Debtor's Brief") [Dkt. No. 16], the Trustee's Trial Brief With Regard to Motion to Sell Property Free and Clear of Liens (the "Trustee's Brief") [Dkt. No. 14], the presentations made at a hearing on this matter held on July 15, 2013 (the "Hearing"), all other evidence in the record, and the relevant case law.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## I. FACTUAL BACKGROUND

The parties are not in dispute as to the relevant facts. Carol Feille D'Avila (the "Debtor") filed a petition for relief (the "Petition") [Dkt. No. 1], under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code" or "Code"), on June 24, 2013. On Schedule A [Dkt. No. 5], the Debtor noted her interest in a residence located at 11309 Rockwell Court, Austin, Texas 78726 (the "Homestead"). The Debtor valued the Homestead at $340,000, explained that this was a "value based on pending sale," and entered $219,533.58 as the amount of the secured claims on the Homestead. The Debtor shares her interest in the Homestead with her husband, Rex Anthony D'Avila, who did not file for bankruptcy. Because the Homestead is jointly managed community property, upon the Debtor's filing of the Petition, it became property of the bankruptcy estate. 11 U.S.C. § 541(a)(2)(A). On Schedule C, the Debtor elected to claim state exemptions, as allowed by 11 U.S.C. § 522(b)(3). She claimed the Homestead as exempt under the Texas Constitution and the Texas Property Code.

The D'Avilas are parties to a divorce proceeding, pending in the 200th Judicial District Court, Travis County. In the Application to Sell, the Debtor represented that the judge in the divorce proceeding has ordered the sale of the Homestead, with the proceeds to be divided between the Debtor and her soon-to-be-ex-husband. The Debtor and her husband executed a

2

contract, pre-petition, to sell the Homestead for $340,000, which they now wish the Court to approve by granting the Application to Sell. They propose to use the proceeds of the sale to pay off their secured debt and the costs of sale, and then to keep the remaining funds for distribution as ordered by the divorce court, without being subject to any further restrictions from this Court, or to any interference from the Debtor's bankruptcy estate or her pre-petition creditors.[1]

Randolph N. Osherow, the Chapter 7 Trustee (the "Trustee"), advances a limited but significant objection to the Application to Sell. He argues that after the secured debts and costs of sale are paid, the remaining funds are subject to the Texas law requiring that those who wish to exempt proceeds of a homestead sale reinvest the proceeds into a new homestead within six months, or lose the exemption. TEX. PROP. CODE § 41.001(c). The Trustee requests that the Court grant the Application to Sell only if the Court extends the exemption objection deadline to six months and ten days after the date of the Homestead sale—until creditors can ascertain whether the proceeds have been reinvested in another homestead or not. The Trustee argues that any proceeds not reinvested within six months will be subject to recovery by the estate in order to pay the creditors of the estate.

Because of the conflict between the Debtor and the Trustee concerning whether Texas Property Code § 41.001(c) applies to the sale of the Homestead, the issue is ripe for decision.

## II. LEGAL ANALYSIS

### A. The Texas Homestead Exemption and the Texas Proceeds Rule

Texas law provides broad protection for homesteads. The law exempts homesteads from

---

[1] The relief requested by the Debtor was not fully articulated in the Application to Sell, but became clear in the course of the Hearing. Accordingly, this Court issued an Order [Dkt. No. 12], clarifying the relief requested, and providing opportunity for creditors or other parties in interest to object. No new objections were received. The Court also invited the Debtor and Trustee to file briefs and bring relevant law to the Court's attention, which they have done.

3

seizure or encumbrance in all but a narrow range of circumstances, and caps homesteads in size but not in value. TEX. PROP. CODE § 41.001, .002. Strong protection of the homestead dates back to the first Texas Constitution of 1845. *See England v. F.D.I.C. (In re England)*, 975 F.2d 1168, 1172, 1174-75 (5th Cir. 1992) (outlining history of Texas homestead exemption).

Protection did not extend, initially, beyond the homestead itself. Once a homestead was "voluntarily sold or exchanged," all protection lapsed. *England*, 975 F.2d at 1174. "This rule was harsh and inconsistent with the purposes of the homestead laws, and many people were rendered homeless because of it." *Id*. Accordingly, a law was added in 1897 to exempt the proceeds of the sale of a homestead. *Id*. Now, in addition to the homestead itself, Texas protects the proceeds of a homestead sale—but only for a limited time. "[P]roceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale." TEX. PROP. CODE § 41.001(c). The proceeds lose their exemption after six months, unless they are reinvested in another exempt Texas homestead. *England*, 975 F.2d at 1173-74. This opinion refers to that rule as the "Texas Proceeds Rule."

### B.  The Texas Proceeds Rule and Chapter 7 of the Bankruptcy Code

Harmonizing the Texas Proceeds Rule with the Bankruptcy Code's exemption regime can be difficult. Soon after a bankruptcy filing, exemptions usually are determined once and for all, having been "determined by the facts and the law as they exist on the date of filing the bankruptcy petition." *Zibman v. Tow (In re Zibman)*, 268 F.3d 298, 302 (5th Cir. 2001). Courts have used the metaphor of a "snapshot" taken on the date of filing, which "determin[es] the extent of the bankruptcy estate and the scope of the exemptions." *Id*.

Under the "snapshot" principle, post-petition events rarely affect whether an exemption applies. As a matter of course, in a Chapter 7 bankruptcy such as the Debtor's, once an

4

exemption is granted, the debtor can sell or dispose of exempt property, or even encumber property with post-petition debts, without involving the bankruptcy court or the bankruptcy estate. "Quite simply, property that has been exempted belongs to the debtor." *Bell v. Bell (In re Bell)*, 225 F.3d 203, 216 (2nd Cir. 2000); *see also Davis v. Davis (In re Davis)*, 170 F.3d 475, 478 (5th Cir. 1999) ("If the [claimed] exemptions are not objected to, the property becomes exempt and unavailable to be levied on by pre-petition creditors or managed by the trustee."). One ramification of this principle is that if property is exempt in the "form" it takes as of the petition date (for instance, real estate or tools of the trade), its transformation to another form (for instance, cash), does not retroactively un-exempt it. *See, e.g.*, *Armstrong v. Peterson (In re Peterson)*, 897 F.2d 935, 938 (8th Cir. 1990) (collecting cases to the effect that post-petition sales do not affect duly claimed exemptions); *In re Gasztold*, No. 11-21287, 2011 WL 5075440, at *3 (Bankr. D. Conn. Oct. 25, 2011) (holding that "a post-petition change in the form of an already exempt asset"—even if the asset could not have been exempted in that new form—does not invalidate the exemption).

Obviously, the Texas Proceeds Rule, which establishes a temporal limit on the exemption available for homestead sale proceeds, complicates the usual exemption process. Looking to events that occur after the bankruptcy filing clouds the clarity of the "snapshot," leaves unsettled the size of the bankruptcy estate and extent of the debtor's post-bankruptcy assets, and fetters the debtor's fresh start. On the other hand, simply reading the temporal limit out of the Texas Proceeds Rule altogether would *broaden* the scope of the exemption rather than merely *giving effect* to it, as the Bankruptcy Code instructs.

### C.  Fifth Circuit and Supreme Court Guidance

Several Fifth Circuit cases provide guidance concerning the relationship between the

Bankruptcy Code exemption regime and the Texas Proceeds Rule. The leading precedent, *Zibman v. Tow (In re Zibman)*, teaches that the Texas Proceeds Rule applies to proceeds that were held as of the date the debtor filed bankruptcy, limiting the exemption that can be claimed on them. 268 F.3d 298 (5th Cir. 2001).

In *Zibman*, the debtors sold their Texas homestead prior to filing bankruptcy, and then, in their bankruptcy filings, exempted the proceeds of sale under Texas Property Code §41.001(c). Because they moved to Massachusetts, they did not reinvest the proceeds into a new Texas homestead within six months. They argued that the "snapshot rule" prevented the exemption of the proceeds that existed on the day of the bankruptcy filing from being "retouched" by post-petition acts, namely their failure to reinvest. In their view, the proceeds, once exempted, remained exempted.

The Fifth Circuit, however, instructed that the "snapshot" includes not just the "facts existing on the date of filing" but "the *entire* state law applicable on the filing date"—including the law that limits an exemption. *Id*. at 304 (emphasis in original). "Courts cannot apply a juridical airbrush to excise offending images necessarily pictured in the petition-date snapshot." *Id*. The bankruptcy court should not transform "an explicitly limited exemption into a permanent one." *Id*. In other words, the court instructed that a debtor cannot invoke the Texas law protecting proceeds of a homestead sale but cut out the limitation that is an integral part of that law. The debtor who takes the benefit of Texas Property Code § 41.001(c) must bear the burden imposed by it. The debtor must "take the fat with the lean." *Zibman*, 268 F.3d at 304. The proceeds of the homestead sale were, at the date of the "snapshot," stamped with the Texas law limitation that was "necessarily pictured" in the "snapshot."

As the *Zibman* court explained, its holding accords with the Supreme Court's

6

jurisprudence on the "snapshot" principle. The principle was laid out initially in *White v. Stump*, in which the Court held that a debtor was not entitled to an Idaho homestead exemption. Idaho protected homesteads "only where a declaration that the land is both occupied and claimed as a homestead is made and filed for record." 266 U.S. 310, 311 (1924). The protection was effective only when the "declaration is filed, and not before." *Id*. Because the debtor in *White* attempted to file the homestead declaration after filing the bankruptcy petition, the Supreme Court held that the debtor could not take advantage of the Idaho exemption. The Court explained that "the point of time which is to separate the old situation from the new in the bankrupt's affairs is the date when the petition is filed." 266 U.S. at 313. Exemptions are "not of property which would or might be exempt if some condition not performed were performed, but of property to which there is under the state law a present right of exemption." *Id*.

The Supreme Court applied the "snapshot" principle to a more complicated set of facts in *Myers v. Matley*, 318 U.S. 622 (1943). In *Myers*, as in *White*, the debtor filed a required declaration of homestead after the bankruptcy petition was filed, but in *Myers*, the Court nonetheless held that the exemption was valid. This was because the Nevada law, applicable in *Myers*, was distinguishable from the Idaho law applicable in *White*, in that, unlike in Idaho, Nevada permitted a homestead declaration to be valid against creditors up until the time an execution sale on the homestead was completed. That is, as long as the declaration was filed prior to sale, it was effective retroactively to trump other attachments on—and even a pending (but uncompleted) execution sale of—the homestead. Characterizing this retroactively effective right as a "present right of exemption" under state law, *White*, 266 U.S. at 313, the *Myers* Court allowed the debtor to file the declaration and claim the exemption. It explained that the Nevada "right to make and record the necessary declaration of homestead" any time before a completed

7

execution sale was protected as of the date of the bankruptcy petition. 318 U.S. at 628. Bankruptcy law neither stripped away this state-law right nor altered the "relative status" between the debtors and her creditors that existed as of the petition date. *Id*. Even though no homestead declaration had been filed as of the petition date, the *right* of the debtor to later file a homestead declaration—retroactively effective as of the petition date—was contained within the petition-date "snapshot." Because the debtor exercised this right prior to a completed execution sale, her homestead was exempt.

Thus, the Fifth Circuit's holding in *Zibman* was essentially an application of *Myers*. In both cases, what the debtor held as of the petition date was an exemption right under state law that was contingent and could be established or lost depending on later events. In *Myers*, the debtor *took* a necessary post-petition step to protect the homestead under state law (by filing the homestead declaration), and thus gained protection that would have been lost; in *Zibman*, the debtor *omitted* the necessary post-petition step under state law (by failing to reinvest the proceeds), and thus lost protection that would have been gained.

The Fifth Circuit revisited the bankruptcy implications of the Texas Proceeds Rule in *Studensky v. Morgan (In re Morgan)*, 481 F. App'x 183 (5th Cir. 2012).[2] In *Morgan*, unlike in *Zibman*, the debtor owned the homestead itself, and not the proceeds of its sale, at the time of his bankruptcy filing. But Morgan did not claim the homestead as exempt in his initial filing. Instead, he opted for the slate of exemptions provided by federal bankruptcy law. His homestead was subject to a lien that rendered it non-exempt under the federal exemptions. Several months

---

[2] Although *Morgan* is designated as "unpublished" and therefore is not binding precedent, *see* 5TH CIR. R. 47.5.4, it is useful for its "persuasive value," *U.S. v. Moore*, 328 F. App'x 308, 309 n. 1 (5th Cir. 2009).

into the case, however, the debtor changed course. He sold his house,[3] and then switched from federal to state exemptions. Although he invoked Texas exemptions, he argued that the six-month limitation did not apply to his circumstances, and that *Zibman* could be distinguished because in his case, unlike in *Zibman*, the petition-date "snapshot" showed him holding his actual homestead (an exemption that "has no temporal limitation" under Texas law), rather than the proceeds of a homestead sale (an exemption that is "limited to six months" absent reinvestment in another Texas homestead). *Id*. at 185. He argued that only debtors holding *proceeds* as of the petition date need abide by the Texas Proceeds Rule; debtors holding an actual *homestead* could dispose of the homestead as they wished, as they can any other exempt property.

The Fifth Circuit denied Morgan's exemption, because he opted for Texas exemptions only after the homestead had been sold—when there were only *proceeds* to exempt, and not the *homestead* itself. "The problem with [Morgan's] argument is that he overlooks the fact that he did not claim a homestead exemption until *after* he sold his home, and even then, he did not claim any value of his home as exempt until he amended his bankruptcy schedules nearly seven months after filing his petition, and more than six months after he had sold his homestead." *Id*. at 185-86 (emphasis in original). The court reasoned that upon Morgan's filing for bankruptcy, all of his property became property of the estate, by operation of law. 11 U.S.C. §541(a). The estate included, at first, his homestead, but then, after the homestead was sold, only included the proceeds of sale. Because under the clear text of the Bankruptcy Code, exemptions can only be claimed "from property of the estate," 11 U.S.C. § 522(b), it was only the *proceeds*—and not the

---

[3] After the Fifth Circuit handed down its opinion in *Morgan*, the Trustee filed an adversary proceeding seeking revocation of Morgan's discharge as a result of this unauthorized, post-petition sale of property of the estate. It remains pending. *See Robbins v. Morgan (In re Morgan)*, Adv. Proc. No. 12-06038 (Bankr. W.D. Tex.).

9

*homestead*—that Morgan could exempt. 381 F. App'x at 186. The Fifth Circuit's holding on Morgan's belated exemption comports with other case law teaching that when exemptable (but not yet exempted) property is sold on behalf of the bankruptcy estate, and converted into a form that it is not itself exemptable, then it is too late for a debtor to seek to exempt the property retroactively. *See Hardage v. Herring Nat'l Bank*, 837 F.2d 1319 (5th Cir. 1988) (denying exemption to debtor who waited until after cotton was sold by bankruptcy estate to claim exemption on cotton); *id.* at 1322 (citing, favorably, *Payne v. Wood*, 775 F.2d 202 (7th Cir. 1985), in which the court denied exemption on household goods to a debtor who failed to assert the exemption until the goods had already been destroyed and replaced with insurance proceeds, which were not themselves exemptable).

In sum, because of his delay, Morgan could exempt only the proceeds of the sale and not the homestead itself. Once this was determined, obviously *Zibman* governed, and the Texas Proceeds Rule limited Morgan's exemption.

Notably, the *Morgan* court gave no indication that it disagreed with the idea that if Morgan had acted more promptly and exempted the homestead itself (not merely the proceeds of its sale), he could have benefited from an "unlimited" exemption of the homestead instead of the limited exemption of proceeds.[4] Indeed, it was only on a factual and not a legal basis that the *Morgan* court distinguished an older case, *Lowe v. Yochem (In re Reed)*, in which a bankruptcy court held that the Texas Proceeds Rule did not apply to proceeds of a homestead sale that occurred post-petition (and after the exemption had been claimed on the homestead). 184 BR. 733 (Bankr. W.D. Tex. 1995). The Fifth Circuit explained that because Morgan claimed his

---

[4] Indeed, the court stated that "*[t]he* problem" with Morgan's argument was that his claim of exemption came post-sale, *id.* at 185 (emphasis added), giving no indication that it *also* disagreed with the necessary legal premise for "[t]he problem."

exemption after a completed sale, *Reed* was "inapposite" and "inapplicable" to the facts of the case before it. 481 F. App'x at 186. It did not indicate that *Reed* was incorrectly decided. The *Morgan* court could have reached the same result simply by disapproving of the *Reed* principle from the start. Instead, the Fifth Circuit took pains to distinguish *Reed*, noting that the holding in *Reed* accorded with the principle that "an exemption does not shield property until the debtor has properly claimed the exemption." *Id*. at 186 n. 1. (Similarly, *Zibman* cited *Reed* for one of its premises, without indicating that *Reed*'s core holding was being overruled—a notable omission. 268 F.3d at 302 n. 9.) Some of the legal principles articulated in *Reed* may be overbroad in light of later precedent. But its facts are precisely on all fours with the case before the Court, and both *Zibman* and *Morgan* cited it without overruling it, so it retains persuasive value.

Fifth Circuit case law does not determine the issue before the Court. It remains an open issue whether the Texas Proceeds Rule applies to the proceeds of a homestead sale that occurs after the petition is filed and after the exemption is duly claimed. Unlike a debtor who sells the homestead pre-petition and seeks an exemption on the proceeds (as in *Zibman*), and unlike a debtor who sells the homestead post-petition but only seeks an exemption after the homestead sale (as in *Morgan*), the debtor in this case still holds her homestead and already claimed her exemption on it. Now she wishes to sell without restriction. In *Zibman* and *Morgan*, by the time the exemption was invoked, there were only proceeds, no actual homestead. In those cases, the only way the debtors could protect the homestead proceeds was by appealing to the Texas Proceeds Rule that protects such proceeds *and* imposes the six-month limitation. TEX. PROP. CODE § 41.001(c). The "fat" of that provision had to be taken with the "lean." *Zibman*, 268 F.3d at 304.

By contrast, here, the Debtor filed for bankruptcy relief and claimed an exemption while

11

holding her Homestead—that is, holding real estate, not proceeds of a homestead sale. Unlike the Texas Proceeds Rule of Texas Property Code 41.001(c), the homestead exemption of Texas Property Code 41.001(a) is not limited in time. On the petition date, the relevant fact was the Debtor's ownership of the Homestead; the relevant law was the homestead exemption, which is not limited in time.

### D. Different Results Under Chapter 13

Several courts from this district, deciding cases filed under Chapter 13 of the Bankruptcy Code, have held broadly that no matter whether the petition-date "snapshot" captures real estate or proceeds from the sale of real estate, the Texas Proceeds Rule applies (presumably up until the time a case is dismissed, although the cases do not spell out any limiting principle). In one case, *In re Zavala*, the debtors exempted a homestead and then, more than two years later, sold it. 366 B.R. 643 (Bankr. W.D. Tex. 2007). They argued that the Texas Proceeds Rule did not limit their subsequent use of the proceeds. *Id*. at 652. They distinguished *Zibman* on the grounds that, unlike in their case, the debtor in *Zibman* could claim as exempt only the proceeds of a homestead sale—and not the homestead itself—as of the date of the bankruptcy filing. *Id*. at 653. The bankruptcy court characterized this as a "distinction . . . without difference"; whether the sale occurs "pre- or post-petition is immaterial," and the Texas Proceeds Rule applies either way. *Id*.

In another case, *In re Frost*, both a bankruptcy court and a district court in this district reached the same result as the court in *Zavala*. *Frost v. Viegelahn (In re Frost)*, No. 09-54674, Dkt. No. 11 (Bankr. W.D. Tex. May 11, 2011), *aff'd*, No. 5:11-cv-719, Dkt. No. 11 (W.D. Tex. July 9, 2012).[5] The *Frost* district court held that its result was compelled by *Zibman*, and stated

---

[5] The *Frost* case is currently on appeal to the Fifth Circuit, as case No. 12-50811.

12

that *Zibman* "rejected" *Reed*. *Frost*, No. 5:11-cv-719, slip. op. at 6.

It is crucial to note that both *Zavala* and *Frost* involve the application of the Texas Proceeds Rule to debtors under Chapter 13 of the Bankruptcy Code, not Chapter 7. Most courts have held that Chapter 13 cases can be sharply distinguished from Chapter 7 cases in that funds received by a Chapter 13 debtor while the plan is in effect become "disposable income" subject to distribution to the creditors of the estate—*even if* the funds are received from exempt sources. *See In re Launza*, 337 B.R. 286, 288-92 (Bankr. N.D. Tex. 2005) (collecting cases, providing textual analysis, and explaining policy reasons for the distinction between Chapter 13 and Chapter 7), *accord In re Andrade*, No. 10-10444, 2011 WL 1559241, at *2-*3 (Bankr. D.R.I. Mar. 16, 2011) (holding that income from exempt property in Chapter 13, unlike in Chapter 7, can be recovered from the debtor for the estate). This is not so in Chapter 7 cases; as a matter of course, post-petition income, including income from exempt sources (such as the sale of exempt property), does not enter the bankruptcy estate. Because of this significant difference, exemptions for debtors under Chapter 13 are not truly final as they are for debtors under Chapter 7, at least as long as the payments undertaken in a Chapter 13 case continue, usually for years.

The distinction between Chapter 13 and Chapter 7 with respect to this issue was recognized by the bankruptcy court in *Frost*. At a hearing, when the debtor advanced the argument that a post-petition sale should be treated differently than the pre-petition sale at issue in *Zibman*, and that the Texas Proceeds Rule should not apply, the bankruptcy court responded:

> If it was a Chapter 7, I would agree with you. But since it's a Chapter 13, you have—you don't have a snapshot of property of the estate. . . . During a 13 . . . new property of the estate comes in during the pendency of the case and becomes property of the estate.

Hearing Tr., *In re Frost*, No. 09-54674, Dkt. No. 89, at 9 (Bankr. W.D. Tex. January 27, 2011); *see also id*. at 10-11 (The Court: "A [Chapter] 7 would be a different situation. In a 7, the

13

property is the debtor's, it's exempted, it's gone, and if he decides to sell it after that, it's subject to only his postpetition creditors. But in a 13, it's different."); *id*. at 12 (noting that the holding in *Zavala* is valid "not in a 7 but in a 13"); *id*. at 14 ("I think [money from the sale of the homestead] comes back if it's not reinvested within six months, in a 13, not in a 7."). Although the *Frost* district court opinion is written very broadly, the issue was decided in the context of a Chapter 13 case, and the *Frost* bankruptcy court limited its holding to the Chapter 13 context. Indeed, the *Frost* bankruptcy court repeatedly noted that its holding would have been different in the Chapter 7 context, such as the present case.

### E. The Court's Holding

In a Chapter 7 case, the best application of the "snapshot" rule articulated in *White* and *Myers* is that once an exemption has been duly claimed on an actual homestead, the proceeds that result from the post-petition, post-exemption sale of that homestead are not subject to later recovery by the bankruptcy estate under the Texas Proceeds Rule. When it is proceeds that are held as of the petition date (as in *Zibman*), or proceeds that are held as of the date the exemption is claimed (as in *Morgan*), the Texas Proceeds Rule applies, for the sound reasons articulated by the Fifth Circuit. If the debtor seeks the benefit of the Texas Proceeds Rule, then the debtor must bear its burden. As *Zibman* instructed, the "fat and the lean," i.e., the proceeds exemption and the burden on the proceeds exemption, cannot be separated. But when a homestead itself is held as of the petition date and as of the date exemption is claimed, the Texas Proceeds Rule is simply not implicated—it is not "necessarily pictured" in the post-petition "snapshot." The debtor who exempts the actual homestead need not seek the benefit of the Texas Proceeds Rule, and thus need not bear its burden.

In analogous contexts, other courts similarly have held that Texas law draws a distinction

between the two different exemption laws, one exempting the real estate itself and the other exempting the proceeds of sale. *See, e.g.*, *West v. Carlew*, No. H-12-0913, 2012 WL 3002197, at *2 (S.D. Tex. July 23, 2012) (distinguishing between "that section of the [Texas] Constitution which exempts the homestead itself," and the "statute specifically enacted" to exempt "proceeds from the voluntary sale of the homestead") (quoting *Johnson v. Hall*, 163 S.W. 399, 402 (Tex. Civ. App.—Texarkana 1913, no writ)). These cases support the conclusion that as of the date she filed for bankruptcy and claimed her homestead exemption, the Debtor had an unchallenged exemption in her actual homestead under Texas Property Code § 41.001(a), without either the benefits or the burdens of Texas Property Code § 41.001(c) being implicated.[6]

A contrary holding would lead to the anomalous result that because Texas provides additional protection to *proceeds* from the homestead sale, *homesteads* enjoy less protection than other categories of exempt assets. If a Chapter 7 debtor exempts tools of the trade or family heirlooms, they are removed from the property of the estate, they belong to the debtor, and the debtor can later sell them and use the proceeds as he or she will. *Davis*, 170 F.3d at 478; *Peterson*, 897 F.2d at 938; *Gasztold*, 2011 WL 5075440, at *3. The same should be true of a homestead properly exempted and then later sold.

---

[6] In the case of *Wolfe v. Jacobson (In re Jacobson)*, 676 F.3d 1193 (9th Cir. 2012), the Ninth Circuit held that California's six-month rule applicable to homestead sale proceeds applied to a homestead still owned by the debtor on the petition date. However, the California homestead exemption differs critically from the Texas homestead exemption. As the Ninth Circuit explained, as of the time of the filing, "[t]he [California] homestead exemption gave the [debtors] clearly defined rights with respect to the [homestead]," namely that "[t]he [debtors] had a right to $150,000 in proceeds," a right that was "contingent on their reinvesting the proceeds in a new homestead within six months of receipt." *Id*. "The homestead exemption merely gave the [debtors] a *conditional right* to a portion of the proceeds from the sale of the [homestead]. *There was no exemption in the [homestead] itself*. To the contrary, the exemption explicitly allowed [the creditor] to force a judicial sale of the [homestead]." *Id*. (emphasis added). The California law is therefore significantly different from the exemption of Texas Property Code 41.001(a), which *is* an "exemption in the [homestead] itself," and not merely "conditional."

15

**III.     CONCLUSION**

For the reasons stated above, the Court will GRANT the Debtor's Application to Sell, without the restrictions on the proceeds of the sale of the Homestead requested by the Trustee.